OPINION.
The plaintiff-appellant, Elizabeth A. Rogers, as next friend of Trent G. Rogers, a minor, appeals from the trial court's order granting summary judgment in favor of the defendant-appellee, Sears, Roebuck and Co. Rogers's claims were for Trent's personal injuries, and for the loss of her child's companionship, allegedly caused by the negligence of Sears in failing to provide a safe waiting room for customers and children in the automobile department. Finding no genuine issue of material fact that Sears breached any duty of reasonable care, we affirm.
On November 25, 1998, Sharon Cowell, a state-licensed day-care provider, took Trent and three other children, all under the age of three years, to the Northgate Mall to visit the mall's Santa Claus and to have lunch. Before visiting the mall, she left her van for servicing at the Sears Auto Center. When she returned two hours later, the van was not ready. At the suggestion of the service manager, she took the children to the waiting room. Colwell testified in her deposition that chairs were positioned along the walls of the waiting room, and that three glass-top tables, which she described as ordinary cocktail tables, were in the middle of the waiting room. She further testified that in the corner there was a box of toys provided so that children could play with them. When entering the waiting room, Cowell warned the children to stay away from the tables. But, as he was playing, Trent jumped over a toy and fell into one of the tables, cutting his lower lip on its edge. The injury required six stitches and left a scar.
In Ohio, premises liability to a business invitee is based on the owner or occupier's superior knowledge of the specific condition that caused the invitee's injuries. Debbie v. Cochran Pharmacy-Berwick, Inc. (1967),11 Ohio St.2d 38, 40, 227 N.E.2d 603; McGuire v. Sears Roebuck Co. (1996), 118 Ohio App.3d 494, 497, 693 N.E.2d 807. The mere occurrence of an injury to a business invitee does not give rise to a presumption or an inference of negligence. Parras v. Std. Oil Co. (1953), 160 Ohio St. 315,116 N.E.2d 300, paragraph one of the syllabus. A business owner or occupier of premises is not an insurer of the safety of its customers. An owner or occupier who invites the public onto its property owes a duty to maintain the premises in a reasonably safe condition and to warn the public of latent or concealed perils of which it has or reasonably should have knowledge. Perry v. Evergreen Realty Company (1978), 53 Ohio St.2d 51,52, 372 N.E.2d 335, 336. The burden of proving that particular premises were not in a reasonably safe condition is on the business invitee.
As Trent was a business invitee, Sears owed a duty not to injure him by negligent conduct and to inspect the premises to discover and protect him from dangerous latent conditions. In her two assignments of error, Rogers argues that Sears breached this duty by creating and allowing an unsafe condition to exist — the placement of a glass table in the middle of its waiting room with knowledge that children would play with toys it provided them while their adult guardians waited. We disagree. Trent was injured when he fell against the edge of the table. There is no expert evidence or, for that matter, any other evidence in the record to suggest that this table was unsafe or was different from any other table with a hard top. Even Ms. Colwell testified that the table against which Trent fell was "the standard table basically."
Furthermore, even if we were to assume, for some reason, that the table posed an unreasonable risk of injury, the claim that Sears had superior knowledge of the danger was refuted by Cowell's testimony, in which she stated that she warned the children about the glass tables:
 And, so I stopped them and I said everybody be still. And they started saying why, why, why. I said look around. And that's when I asked them what do you see that's not safe in here. And they said the table. I said what about the tables. It's glass. I said and what do we do around glass. They said it's dangerous. So I said let's turn back and they started to cry. * * * I said I'm sorry. It's dangerous, it's not safe and Miss Sharon do [sic] not want you all to go in there and that's when they said why. Because if we get hurt, you have to call 911. I said exactly. Well, we won't run Trent said.
 The injury that Trent suffered, it should be pointed out, was not caused by the glass top breaking. Trent's injury was caused simply by the impact of his fall upon the table. Rogers argues, nonetheless, that a dangerous condition for the children of customers was foreseeable when Sears put toys in the waiting room, thus providing an easy distraction and an invitation to carelessness. We find this argument to be the equivalent of a claim that Sears had a duty to "childproof" its waiting room, making it virtually impossible for children to harm themselves while playing with the toys. With such a duty, Sears would have been required to remove all hard edges and to create a room of soft, cushioned materials that could not possibly have offered any physical resistance to a cavorting child. Such a duty would place the cost of a risk-free environment on the owner or occupier of the premises as an insurer, rather than giving rise to liability upon common-law rules of negligence.
It should be noted that Rogers also appears to argue that Sears was negligent in making Cowell and the child wait as long as they did, and there is certainly evidence that the service took an inordinate length of time. Whether Sears took too long servicing the vehicle, however, was a matter arising from the constructive conditions of the service contract. In other words, Sears's liability for Trent's injury based on the length of time it took to perform under the service contract presented a question of consequential damages in contract, not proximate cause in tort. Similarly, the suggestion in the record that Cowell was not given prompt or attentive service because of her race or gender presented a claim of intentional discrimination, not premises liability.
Summary judgment is a procedural device to determine if triable factual issues exist. Questions of credibility are to be resolved only by the trier of facts and doubts should be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359,2001-Ohio-1286, 604 N.E.2d 138. The granting of summary judgment is reviewed de novo. See Polen v. Bake, 92 Ohio St.3d 563, 564-565,2001-Ohio-1286, 752 N.E.2d 258. A motion for summary judgment should be granted if, after viewing the facts set forth in the pleadings, deposition, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, the trial court determines (1) that no genuine issue of material fact remains to be litigated; (2) that the moving party is entitled to judgment as a matter of law; and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Civ.R. 56(C). Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241, citingState ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.,69 Ohio St.3d 217, 219, 1994-Ohio-92, 631 N.E.2d 150; see Borger v.McErlane (Dec. 14, 2001), 1st Dist. No. C-010262.
The trial court did not give its reasons for granting summary judgment to Sears. Although Sears's argument in support of summary judgment principally rested upon the open-and-obvious doctrine, we conclude from the record that Rogers simply offered no evidence that the table upon which Trent fell created any unreasonable or concealed risk of harm to anyone, including children.
The judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Sundermann, J., concur.